**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martha Anita Tristan, | No. CV-20-02240-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Martha Anita Tristan's application for Social Security disability insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a complaint (Doc. 1) seeking judicial review of that denial and an opening brief (Doc. 21). Defendant SSA Commissioner filed an answering brief (Doc. 22), and Plaintiff filed a reply (Doc. 25). The Court has reviewed the briefs and Administrative Record ("AR") (Doc. 15) and now affirms the Administrative Law Judge's ("ALJ") decision (AR 17-32).

**I.  Background**

Plaintiff filed an application for SSDI benefits on July 21, 2017, alleging a disability beginning on July 8, 2014.[1]  (AR 17). Plaintiff's claim was initially denied on February 2, 2018, and upon reconsideration on August 17, 2018. (*Id*.)  A hearing was held before the ALJ on January 16, 2020. (*Id.* at 39-73). Plaintiff's application was denied by the ALJ on April 21, 2020. (*Id*. at 32). Thereafter, the Appeals Council denied Plaintiff's request for

---

[1]     Plaintiff previously filed an application for SSDI benefits that was denied by an ALJ after a hearing.  That denial was later affirmed.  (*Id*.)

review and this appeal followed.

After considering the medical evidence and opinions, the ALJ found that Plaintiff had the following severe impairments: obesity, fibromyalgia, degenerative disc disease, hypothyroidism, osteoarthritis, diabetes mellitus, hypertension, obstructive sleep apnea, cervical degenerative disc disease and spondylosis, inflammatory arthritis, bilateral hip arthritis, lumbosacral spondylosis, right shoulder arthritis, lumbar spondylosis, asthma, bipolar disorder, anxiety, depression, and chronic pain syndrome. (AR 20.) Notwithstanding these severe impairments, the ALJ determined that Plaintiff was not disabled and had the residual functional capacity ("RFC") to perform light work with a number of limitations. (*Id.* at 23.)

## II. Legal Standards

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe"

medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.  Analysis**

Plaintiff argues the ALJ committed harmful error by rejecting the assessments of treating physician Dr. Germain and Nurse Finney and in rejecting her symptom testimony. (Doc. 21 at 2). The Court will address these issues in turn.

**A.  Medical Opinion Evidence**

Because Plaintiff applied for disability benefits after March 27, 2017, the new set of SSA regulations for evaluating evidence from medical providers applies to this case. *See* 20 C.F.R. § 416.920c. These regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[2]

---

[2]  Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.  Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.*  With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up).

### 1. Dr. Michael Germain

In a November 7, 2017 assessment, Dr. Germain opined that Plaintiff was incapable of lifting or carrying any weight, could stand or walk less than two hours in an eight-hour workday, and could only sit for 30 minutes in a workday due to numerous conditions, the most limiting being severe spinal stenosis and neurofibroma of the pelvis.  (AR 581-83).  The ALJ determined that this assessment was "not persuasive" for what appear to be four reasons: (1) Dr. Germain's treatment notes from September 2017 stated that Plaintiff "was minimally symptomatic, if at all, due to neuro-fibroma"; (2) another of Plaintiff's physicians (her treating orthopedist) noted only "minimal" stenosis; (3) Plaintiff "reported to an appointment with Dr. Germain on the same date the form was completed, but the information in this visit is not corroborated in treatment records.  For example, the doctor states the claimant needs fusion, but this is not consistent with other treatment records"; and (4) "[o]verall, the evidence does not support finding the claimant is limited in the degree proposed by Dr. Germain."  (AR 28).

---

treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c.

- 4 -

Plaintiff argues that the ALJ's first proffered rationale for discrediting Dr. Germain's opinion—inconsistency with Dr. Germain's treatment notes from a prior visit concerning the severity of Plaintiff's symptoms arising from neurofibroma—was invalid because "records showed [Plaintiff] did report pain in the area of the tumor/lesion," "Dr. Germain listed many other diagnoses to support the assessed limitations, including 'severe spinal stenosis, osteoarthritis, fibromyalgia, DDD of thoracic spine, rotator cuff injury,'" and "[t]his record supports assessed limitations on those bases as [Plaintiff] received consistent pain management and rheumatology treatment." (Doc. 21 at 22.)

These arguments are unavailing. During a September 26, 2017 visit with Plaintiff, Dr. Germain wrote in his treatment notes that Plaintiff's "benign neurofibroma of the right pelvis" was "minimally symptomatic if at all." (AR 576.) However, in his assessment form completed on November 7, 2017, Dr. Germain opined that Plaintiff suffered from an array of highly limiting, if not debilitating, symptoms and then specifically identified "Neurofibroma of pelvis" and "Severe spinal stenosis" as the two "findings that support the above limitations." (*Id.* at 583.) Although Plaintiff's opening brief identifies reasons why a different factfinder might have been able to reconcile the September 2017 notes and the November 2017 assessment,[3] it was rational for the ALJ to conclude that Dr. Germain's close-in-time findings were contradictory—nowhere did Dr. Germain explain why the neurofibroma condition that was "minimally symptomatic if at all" in late September 2017 could, just over a month later, become one of the two conditions that served as the foundation for Plaintiff's debilitating symptoms. And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Thus, regardless of whether the ALJ's finding of internal inconsistency between the September 2017 notes and the November 2017 assessment is characterized as

---

[3] Plaintiff's emphasis on the laundry list of diagnoses identified in Dr. Germain's treatment notes from September 2017 is misplaced. Had Dr. Germain's November 2017 assessment form identified those other diagnoses as the cause of Plaintiff's symptoms, there would not be an issue of inconsistency. Nevertheless, Dr. Germain chose to identify "Neurofibroma of pelvis" in the November 2017 assessment form as one of the two diagnoses that supported his opined-to limitations.

a flaw of "consistency" or "supportability," it serves as a permissible basis for discounting Dr. Germain's medical opinion under the new SSA regulations. *Erasun v. Comm'r of Soc. Sec. Admin.*, 2022 WL 620949, *5 (D. Ariz. 2022) ("[T]he Ninth Circuit has—under the pre-2017 regulations—remarked that internal inconsistency between a physician's own notes and opinions is a clear and convincing reason to reject the opinion.") (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).

Given this determination, it is unnecessary to decide whether the ALJ's other proffered reasons for discrediting Dr. Germain's medical opinion were also valid. *Cf. Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such is deemed harmless and does not warrant reversal.") (alterations in original) (internal quotation marks omitted); *see also Magnotti v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4025959, *4 (D. Ariz. 2021) (citing cases).

### 2. Nurse Finney

In a September 2017 assessment, Nurse Finney opined that Plaintiff's schizoaffective, bipolar, and panic disorders would create moderately severe or severe limitations in a number of areas (including "Understand and remember detailed instructions," "Carry out detailed instructions," "Maintain attention and concentration without interruptions from psychologically-based symptoms," "Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance," and "Sustain ordinary routine without supervision") and cause her to miss more than three days of work per month. (AR 571-74.)

The ALJ determined that Nurse Finney's opinion was "not persuasive" for what appear to be three reasons: (1) "the nurse diagnosed bipolar ADHD and panic disorder until October 21, 2015" but then "[h]er diagnosis changed to schizoaffective disorder with minimal explanation although treatment notes indicate the claimant began to report hallucinations shortly after this visit. The nurse did not refer the claimant to a psychiatrist

1   on June 9, 2017 and the claimant reported she no longer had audio/visual hallucinations.
2   However, she was diagnosed with schizoaffective disorder in subsequent mental health
3   records"; (2) "[t]here are gaps in treatment and her treating providers did not express any
4   significant concern regarding the claimant's mental health status"; and (3) "[w]hile the
5   medical evidence supports limitations from mental health impairments, it does not support
6   the degree of limitation in the nurse's opinion." (*Id.* at 28.)

7   As for the ALJ's first proffered rationale, Plaintiff argues that the ALJ's
8   determination that Nurse Finney "failed to provide explanation for" the changed diagnosis
9   is belied by the fact that "even the ALJ acknowledged the changes in [Plaintiff's] symptom
10  reporting that could have prompted the shift in diagnosis: [Plaintiff's] mood had become
11  more labile with manic episodes, and she reported auditory and visual hallucinations."
12  (Doc. 21 at 21.) Plaintiff further notes that "whether the assessed limitations stemmed
13  from bipolar affective disorder or schizoaffective disorder does little to discount [Nurse]
14  Finney's assessment that was based on consistent treatment over the course of almost four
15  years and medication trials of almost ten different antipsychotic and antidepressant
16  medications. The Social Security disability program is symptom-based, not diagnosis-
17  based." (*Id.*) In response, the Commissioner argues that "Nurse Finney relied on a
18  diagnosis of schizoaffective disorder, based on psychotic symptoms such as hallucinations,
19  yet Plaintiff reported hallucinations for only a short period" and thus the ALJ "reasonably
20  found that the lack of consistent symptoms in Nurse Finney's treatment notes . . .
21  constitute[d] a lack of support for her conclusions." (Doc. 22 at 18.) In reply, Plaintiff
22  argues that "the change (or addition) of a diagnosis has no necessary relation to the severity
23  of a claimant's work-related limitations, because it is the effects of a claimant's mental
24  impairments, not the particular diagnosis, that result in work related limitations." (Doc. 25
25  at 10.) Accordingly, Plaintiff argues that even if her "hallucinations were time-limited . . .
26  that does not explain why [Nurse] Finney's assessment should be discounted." (*Id.*)

27  The Court finds no error in the ALJ's first rationale for discounting Nurse Finney's
28  opinion. As discussed elsewhere in this order, under the new SSA regulations, the two key

considerations when evaluating medical opinions are consistency and supportability. Here, the ALJ's discussion of Nurse Finney's diagnosis of schizoaffective disorder is best characterized as a concern about supportability—whether the diagnosis was, in fact, supported by the underlying medical records. Thus, if there is substantial evidence underlying the ALJ's finding of a lack of supportability, this Court must affirm.

The ALJ's finding on this point is supported by substantial evidence. Although, as the ALJ expressly acknowledged, Plaintiff did report experiencing hallucinations during one visit with Nurse Finney, the Commissioner identifies over twenty additional records in which hallucinations were not noted. (Doc. 22 at 18, citing AR 867, 869, 870, 871, 872, 874, 876, 885, 886, 888, 890, 892, 894, 896, 898, 900, 902, 904, 906, 908, 910, 911.) Although it is unfortunate that the ALJ did not specifically identify these records in the underlying decision, it is clear in context that the ALJ was referring to them, and this Court may affirm where "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation and internal quotation marks omitted). This is not an instance of the Commissioner offering impermissible "*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking," *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009), but instead a permissible instance of the Commissioner simply identifying the medical records to which the ALJ was, in context, referring.

The Court also disagrees with Plaintiff's contention that, even assuming Nurse Finney's diagnosis of schizoaffective disorder was unsupported by the record, the ALJ could not rely on this misdiagnosis as the basis for discounting Nurse Finney's opinions because "it is the effects of a claimant's mental impairments, not the particular diagnosis, that result in work related limitations." Because Nurse Finney identified her diagnosis of schizoaffective disorder as providing part of the foundation for the opinions in her assessment form (AR 571), it was rational for the ALJ to conclude that the misdiagnosis undermined those opinions.

Given this determination, it is unnecessary to decide whether the ALJ's other proffered reasons for discrediting Nurse Finney's medical opinions were also valid. *Carmickle,* 533 F.3d at 1162; *Magnotti,* 2021 WL 4025959 at *4.

## B. Plaintiff's Symptom Testimony

In her Function Report, Plaintiff stated that she suffers from work-preclusive physical and mental impairments, including chronic pain that interferes with concentration and memory and the inability to stand, sit, or walk for prolonged periods of time. (AR 316-23.) During the hearing, Plaintiff further testified that she experiences pain "[a]ll the time," even while on medication, and can only sit for 20 minutes at a time and only stand for 10 to 15 minutes at a time. (*Id.* at 57.) Plaintiff also testified that she occasionally uses a wheelchair rather than walk long distances. (*Id.* at 55).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence, including her own statements and testimony regarding activities of daily living. (*Id.* at 24.) The ALJ then provided a lengthy list of reasons for discounting Plaintiff's symptom testimony, including: (1) although Plaintiff testified to using a wheelchair at times, there was no corroboration for wheelchair use in the record or any record of a wheelchair being prescribed by a provider; (2) "[t]here are multiple diagnoses and a history of treatment with procedures through pain management . . . [and] medication. She testified she was treated with Oxycodone by Dr. Posner, but she did not have much treatment with [D]r. Posner, so it appears the medication was reasonably controlling her symptoms"; (3) "the claimant has alleged disability beginning July 8, 2014," but on "July 15, 2014, the clamant reported to her treating doctor she had fatigue and malaise, but no physical disability and her activities of daily living were normal"; (4) "[d]iagnostic test results," which the ALJ went on to summarize at length, "support the conclusion she has work related limitations, but not greater than found in this decision"; (5) during "a consultative examination in January 2018 . . . [t]he examiner noted the

1    claimant walked without assistance and appeared to sit comfortably" and made other
2    findings that are "not indicative of physical limitations that would support disabling
3    limitations in the claimant's residual functional capacity"; (6) Plaintiff experienced
4    improvement after she began receiving mental health treatment; (7) Plaintiff "routinely
5    presented to [non-mental health] providers fully oriented with appropriate mood and affect,
6    normal insight and/or normal judgment"; and (8) Plaintiff made various "statements to
7    providers" in which she "reported no physical disability and normal activities of daily
8    living." (*Id.* at 25-28.)

9    Plaintiff argues that the ALJ did not provide sufficient reasons for discounting her
10   testimony and that she is entitled to a remand for an award of benefits. (Doc. 21 at 25-32.)
11   The Commissioner argues that the ALJ properly examined the medical evidence to
12   determine that the record did not support Plaintiff's testimony as to the severity of her
13   symptoms. (Doc. 22 at 20-24.)

14   An ALJ must evaluate whether the claimant has presented objective medical
15   evidence of an impairment that "could reasonably be expected to produce the pain or
16   symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)
17   (citations omitted). In evaluating a claimant's pain testimony after a claimant produces
18   objective medical evidence of an underlying impairment, "an ALJ may not reject a
19   claimant's subjective complaints based solely on a lack of medical evidence to fully
20   corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir.
21   2005). However, the ALJ may "reject the claimant's testimony about the severity of [the]
22   symptoms" by "providing specific, clear, and convincing reasons for doing so." *Brown-*
23   *Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).

24   Applying these standards, the Court finds no harmful error. As noted, the ALJ
25   identified a medical record during the period of alleged disability in which Plaintiff's
26   treating provider wrote that Plaintiff had "[n]o physical disability and [her] activities of
27   daily living were normal." (AR at 25, citing AR at 494.). Such inconsistency is a valid
28   reason for an ALJ to discount a claimant's symptom testimony. *See, e.g., Molina v. Astrue*,

674 F.3d 1104, 1113 (9th Cir. 2012) ("In evaluating the claimant's testimony, the ALJ may . . . consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct . . . [and] may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . [T]he ALJ [also] supported her conclusion that Molina was not credible on the additional grounds that Molina's allegations were undermined by her demeanor and presentation as described by Dr. Yost."); *Bedson v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1198830, *6 (D. Ariz. 2019) ("Bedson didn't make any mention of this condition or its symptoms when being examined by a psychological examiner in 2014. It was permissible for the ALJ to reject Bedson's testimony on this basis.") (citation omitted); *Dunn v. Astrue*, 2009 WL 1844347, *7-8 (C.D. Cal. 2009) (affirming ALJ's rejection of claimant's symptom testimony, where claimant testified at the hearing she "cried daily" yet "never told [her doctor] she cried daily").

      The ALJ also discussed records indicating that Plaintiff had no swelling, tenderness, pain, stiffness, or limited range of motion. (AR 25, citing A.R. at 397, 432.) The ALJ discussed that Plaintiff had some generalized pain in the upper right extremity and occasional decreased range of motion, but otherwise the medical records showed normal findings. (*Id.*) This, too, provided a clear and convincing reason for discounting Plaintiff's symptom testimony.

      As for Plaintiff's activities of daily living, the record establishes, and the ALJ discussed, that Plaintiff prepares meals, does light laundry and dusting, shops by phone and online, and handles her personal finances. (AR at 316-323.) Plaintiff also traveled to San Diego with her husband and son for a vacation and had been attending some family events. (*Id.* at 906, 911.) It was rational for the ALJ to conclude that such activities were inconsistent with the alleged severity of Plaintiff's symptoms. For instance, the ALJ discussed that Plaintiff is able to engage in daily activities that require her to maintain concentration, persistence, and pace, such as with managing her finances, online shopping, and preparing meals. (Id. at 22.) The ALJ permissibly found that such activities were

inconsistent with Plaintiff's contention that she is precluded from learning, recalling, and using information. (*Id.*) Although the Court recognizes that a claimant is not required to be completely incapacitated in order to be found disabled, it is also true that an ALJ may consider a claimant's daily activities to determine whether they are "inconsistent with the alleged symptoms." *Brown-Hunter*, 806 F.3d at 488–89. The ALJ rationally did so here.

Because the ALJ identified multiple specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony, any error with regard to some of the ALJ's other proffered reasons were harmless. *Molina,* 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 27th day of May, 2022.

Dominic W. Lanza
United States District Judge